*174 Opinion of the Court.
Brownston filed his bill against Cropper, alleging that he purchased a negro of Cropper, on the 19th of November 1819, and that she died on the 5th of the ensuing month, having been sick of some inveterate and chronic disease, from the hour of her sale ; and that he had discovered that she was laboring under the same disease long before the sale, to the knowledge of Cropper, who represented her to be sound and healthy, which representations induced the sale; that he took a bill of sale warranting the title, but omitting her health, which was drawn by Cropper, and which he exhibits as part of his bill; that he was to pay for said slave two hundred dollars, one hundred and fifty in saddle trees, and the rest in a note assigned to Cropper on a certain John Miles; that the saddle trees were paid at the time, but the note not yet paid up by Miles to Cropper, who was in laboring circumstances, approaching insolvency, and if Cropper received that money he should probably lose it. He further alleges, that during the sickness of the slave, a short time after the sale, he offered Cropper back the slave, and required a rescision of the contract; and that Cropper said he could not take the slave then, but at a short day named, would take her back, or in some other way adjust the matter to Brownston’s satisfaction.
The answer of Cropper admits the sale and consideration, enters into a detail of the circumstances attendant upon the negotiation, alleges that the bill of sale expresses the slave to be between forty and fifty years of age, and that he had so informed Browston, and consequently, that she was infirm, and that Brownston might have her for two hundred and fifty dollars. He alleges he did not sell the negro as being in perfect health, and that Brownston well knew the situation in which he found the woman, and that he, Brownston, was not entirely ignorant of her indisposition.
Miles made no answer. The court below dismissed the bill with costs; and to reverse this decree, this writ of error is prosecuted.
1. We cannot suppose that this bill was dismissed by the court below, for the want of jurisdiction in the chancellor. It is the province of courts of equity, to rescind contracts ; and although it will not new model them, and in personal contracts may refuse its aid, *175 where the remedy is complete at law; yet, in this case, there are several circumstances which ought to sustain the jurisdiction. The laboring circumstances of Cropper, are not contested. It is shown, that it was verbally agreed between the parties, at the sale, that if Brownston liked the negro, on trial, he was to pay, at his discretion, fifty dollars more; if she did not answer his purpose, he might restore her, and Cropper was to pay for the saddle trees ; and that when she was tendered back, Cropper refused to take her on that day, but assigned a convenient and not distant day, when he would take her back, or otherwise settle the matter to Brownston’s satisfaction. Under such circumstances, a court of equity was properly applied to for relief, and Miles, in the mean time, was enjoined from paying the balance to Cropper, and a prayer inserted, that the payment should be made to the complainant.
Where the seller of a slave represents her to be in good health; but the slave herself truly informs the purchaser that she is sick, can be of no use to him, and must die in a short time; these declarations of the slave shall not operate as notice to the purchaser so as to discharge the seller from his responsibility for misrepresentation.
2. The propriety of the decree of the court below will, therefore, rest on matters of fact, into which we will now enquire. It is shown, even by the defendant’s own proof, as well as others, that the slave had been ill for three months before, with a settled disease; and to one witness, Cropper expressed the intention of selling her, lest he should lose her value by death. The answer of Cropper does not meet the charges of the bill direct, or deny that he represented her to be sound ; nor does he boldly assert or pretend that he disclosed her true situation to Brownston. Had he done so, in as full a manner as the testimony now does, it is impossible to suppose that any reasonable man would have risked the purchase. Although the answer may not be so evasive as to authorise a decree against Cropper, yet it is certainly so feeble as to be liable to be assailed by weaker testimony than one of a more positive character would be; especially, as an intention to put the loss of the slave on some other person, is shown. Two witnesses prove the representations of Cropper, that the slave was hearty and sound, and fit for business ; and no witness, on the part of the defendant, pretends to show that Cropper himself represented the sickness of the slave, in the deep colours that it really existed, or that he stated the fact at all, when he was bound, by every principle of correct morality, to tell the whole truth. The testimony, strong *176 est in favor of the defendant below, is that of his daughter, who deposes that the slave herself told Brownston of her sickness, before the sale ; and after the sale, when informed by him that he had bought her, she stated she could not be of any use to him, as she was near death. When it is recollected, that frequently, on such occasions, there is a strong indisposition in such creatures to be sold, and that by stratagem, to avoid a sale, they may frequently feign sickness, or magnify any particular complaint with which they are affected. Brownston might well disbelieve her story ; especially, when the words of the master assured him to the contrary. For his own statements, the master is responsible, and ought not to be permitted to release himself of responsibility for his own false-hoods, by showing that the slave, at the time, so far corrected him, as to tell the truth.
We, therefore, conceive that the plaintiff in error has shown himself entitled to relief, and that Cropper must be decreed to pay one hundred and fifty dollars, the stipulated price of the saddle trees, and to surrender the note of Miles, and that Miles ought to be decreed to pay the amount thereof to the complainant, and the contract relative to the slave to be wholly annulled.
Decree reversed with costs, and the cause remanded for a decree in conformity with this opinion ; but, with the assent of the plaintiff in error, without costs, as to the defendant, Miles, in this court.