The Opinion of the Court in this case
Chief Justice Robertson and Judge Nicholas concurring, Judge Underwood dissenting
was delivered by the
Chief Justice,
as follows.
This is a'case of forcible entry and detainer, in which Davis, the plaintiff below, having failed, has appealed to this Gourt.
The land in contest was never enclosed, and is included by both the elder patent under which Young holds, and the junior grant under which Davis holds.
Each party had resided for many years, and still lives, within the bounds of the patent under which he claims, though the dwelling house of neither of them is, or ever was, on any part of the land common to both grants; but more than seven years prior to the first of January, 1816, Davis’ farm had, by a continuous-fence, been extended beyond the line of interference, and, as thus ex *300 tended, has, ever since been occupied and cultivated by' himself and those from whom he derived his title ; and, sometime between 1812 and 1818, Young had also enclosed a part of' the interference between the two patents ; but had not enclosed any portion of the land now in controversy, until within two years prior to the institution of this proceeding against him.
Decision of the circuit court.
An actual residence upon the land} is indispensable to ensure to the occupant, the protection of the act of 1809, for the speedy adjnstmentofland claims — “ the 7 years law:” so decided, often apd invariably. But the precise meaning of the terms ‘ settlement’ — ‘settle,’ as used in .that act — what possessions the former term may include — hasne , ver been heretoforedetermincd by this court. [Judge Underwood thinks for mev decisions have defined Jhnedthemeaning of the terms. Dissent: post.]
Review of various cases, upon the seven years’ law, with reference to the question, whether tho act ap
Among various opinions given by the circuit judge, during the trial, which require no special notice, he decided that the seven years limitation law of 1809, enacted for the protection of actual settlers, could not be made to apply in this ease, beneficially to Davis; because his dwelling house was not within the boundary of the adversary patent, under which Young claims.
That opinion presents a point which has never beert settled, or directly decided, by this court. ‘When all the cases are collated and scrutinized, it will be seen, that, though this court has invariably decided that actual residence is indispensable to the .protection assured by the limitation law of 1809, and that an actual settlement, within the contemplation of that statute, should not, as a matter of course, be extended, by construction, to the limits of the occupant’s claim or title — it has never yet conclusively -defined, in any other respect, the settlement intended by the statute; nor determined whether the dwelling house must be on the disputed land; or whether the occupant should be deemed to be settled on the land claimed by his adversary, whenever his dwelling house, though not included within the conflicting claim, is embraced by his own claim, which elsewhere conflicts, and his farm, or other improvements subservient or appertinent to the mansion, and actually used and occupied by him under the same title, shall have been, as long as seven years, according to the statute, on the land claimed by another, under an adverse title.
In Anderson vs. Turner, 3 Marshall, 131, this court said, respecting Anderson, wlio was defendant in the circuit court, — “He is, it is true, proven to be possessed of the land in contest; but he is not shewn to have actually settled upon the land included within the claim of *301 Turner.” It is believed that the facts presented in that case, in the circuit court, were, in every essential particular, like those which the record of this case exhibits in this court. But it will be found, by an inspection of the record of that case, in thfe office of our clerk, that it does not shew, that Anderson’s enclosure had been extended, for seven years, within the boundary of Turner’s claim ; or that, if that important fact could be inferred at all, it was not presented in sue!) a manner as to have authorized this court to take judicial cognizance of it. The bill of exceptions states, that Anderson had purchased from McKee, the grantee of the title which conflicted with Turner’s claim, and that he had actually resided, for more than thirty years, within the boundary of his own claim, but not within the claim oj Turner; and also, that be had been “actually possessed of the land in contest,” for- about eleven years. The plat returned by the surveyor exhibits some zigzag marks across the line of interference between the conflicting claims, and “ Anderson's field" is written within those marks. But neither the surveyor, in his report, -nor any witness on the trial, explained whether those marks designated a part of Anderson’s farm on which he resided; nor does the bill of exceptions contain a particle of evidence as to the time when the field had been cleared or enclosed, or how long, or by whom, it had been occupied. This court could not, therefore, have judicially decided, from such facts, that any part of the land claimed by Turner within Anderson’s patent liad been enclosed and continually occupied by Anderson, as a part of his residence, for as long a period as seven years prior to the institution of the suit; or even that the field had been actually enclosed before the commencement of the suit. And hence the field is not alluded to in the opinion delivered by the court; and therefore, when the court said that, though Andej’son had been in the possession of the land in contest, still there was no proof that he had ever been actually settled on it, we should presume that the idea intended to be conveyed by the word 11 possession" was, that there was only a constructive possession, in fact. In many other *302 cases decided by this court, on the same statute, whenever the word “possessed” is used, as contra-distinguished from “settled,” a constructive possession, merely was evidently intended. Nothing else was intended in the case of Anderson vs. Turner : first, because tiie bill of exceptions in that case, did not, as already shewn, prove that there had been a possesdo pedis {or seven years ; nor that there had-been, for that period, or even for any period prior to Turner’s suit, any other than a constructive possession in fact; and, second, because, had the court known- that Anderson liad held the land in contest, by actual enclosure, connected with bis mansion by a continuous fence, or occupied in subservience to it, for a period of more than sevens years, we are not allowed to presume or admit, that such a fact would have been passed by without any notice or suggestion whatever, or that the court would have been willing to say, that Anderson liad been possessed, but not settled, without shewing how he had been possessed, and why he was not deemed to have been settled.
plies when the* dioellinghouse of the settler is not upon the part of the land adversely claim ed — none of which cases,(as the majority an-, derstand them) contain any decision, or intimation, that the act is to be so restricted in its operation.
Anderson vs. Turner, 3 Mar 13 , first examined.
*302 It is well known, that a claimant may be possessed of land, without being actually settled on it; and that an occupant may be in actual possession to the extent of his claim, although his actual enclosure is more circumscribed ; and this obvious distinction icas deenied so essential by the legislature, as to be made the basis of the important statute of limitations, of 1809.
It would have been quite easy and appropriate for the court to have said, in Anderson vs. Turner, or in some other of the very many cases which presented tiie point, that an occupant cannot be settled on his adversary’s claim, unless his dwelling house be upon it, if such had been the opinion of the court. And such a decision— summary and precise and plain as it would have been, would also have been recommended by the fact, that it would have prevented much doubt and perplexity, known to have existed, as to what the word- “settled” was designed to mean and comprehend. And, therefore, it is to be presumed, that this court would, in some case, and especially in that of Anderson vs. Tur *303 ner, have said, at once, that the occupant’s dwelling house must he within the limits of his adversary’s claim, if .such had been deemed to be the true exposition of the act of 1809.
Miller v. Humphreys, 2 Mar. 446, and—
Hite’s Heirs v. Shrader, 3 Litt, 445, examined
The boundaries of a settler’s claim, and of his actual settlement, may be different. — ,. —But, a's fab as permanent ‘improvements have been made and used by a bona fide set-.tier,.in connec•tion with, and .subservient to his residence, and within the limits of a claim under which he settled — so far his ‘settlement’ extends ; and if such improvements extend into an adversary claim, he must be deemed a setller thereon;and, by addling to his improvements, he may enlarge his settlementiand, when he thus encroaches upon an adversa-' ry claim, within the limits of ’his own, he will "be deemed a ■‘settler’ upon the interference from the time ofthe encroachment — when the statute begins to run, and, after 7 years, affords its protection. [Judge 'TJ. thinks the first entry ofthe settler, with title,or his acquisition of title after entry, are •the only points, at which the •computation of time can com■inence. — Dissent — r,post. 3
*303 Bm. in the case of Miller vs. Humphreys, 2 Marsh. 448, t.he court incidentally said, in effect, that an extension of the enclosure is pn extension of the settlement, and that the settler is actually settled to the extent of his actual close.
And, in Hite’s heirs vs. Shrader, 3 Litt. 445, the court said : — “ The defendant proves, that he has had possession for about ten years before the commencement of this suit; but it appears, that he settled outside of the interference between the two claims, and that no part of his enclosure is within the bounds of the land claimed by the compiainánts ; and, according-to the settled construction of the act for the speedy adjustment of land claims, which prescribes the limitation of seven years, for bringing suits for the recovery of land under adverse claims, it only applies to cases where suit is brought for "land on which the adverse claimant has been settled for seven years.” Thus clearly intimating, that an occupant should be deemed to be settled to the extent of his actual- enclosure, at least -, for, unless such had been the opinion of the court, the declaration that 'lno part of {the).enclosure is within the bounds of the land claimed by the'complainants,” was not only useless and unmeaning, but inappropriate and delusive.
But whatever should be inferred from the tenor of the cases of Anderson vs. Turner, of Miller vs. Humphreys, and of Hite’s heirs vs. Shrader, the point we are now considering was not judicially decided in either of them ; and, as there is no other adjudged case in which that point can be deemed to have been settled, or directly touched, we are left, without any other guide than the statute itself, to settle definitively and authoritatively, for the first time, its true import and application.
Considering the statute of 1809, so far only as it has not been hitherto authoritatively expounded, and conceding — as has been often decided — that the boundary of the occupant’s claim is not, merely because it defines the extent of his claim, the boundary, also, of his actn *304 al settlement on the land so claimed, we are of the opinión, that he should be deemed to be settled to the extent of the permanent improvements made and used by him, in subservience to his residence, and within the limits of the claim under which he settled and lives. All such improvements should be considered, as the occupant considered them, to be integral parts of his settlement or residence ; because each is but an1 incident to, of a consequence of, his habitation, and ministers to his necessities and comforts as an actual occupant, and is equally embraced in the common sense, popular idea of his settlement, or residence, or home., Moreover, we cannot believe, that a provident legislature, in enacting a law for securing peace, safety, and repose to those who improve and occupy land within the limits of this Commonwealth, believing that they are settled upon and are improving their own soil, ever intended that the-dwelling house only, should be protected, and that the kitchen, the smoke house, the dairy, the barn, the com field, or even the enclosed woodland pasture, should be unprotected, merely because they may happen to be on one side of a line of a conflicting superior claim, and the mansion house happens to be on the other side of the same line, though all of them are within the boundary of the claim under which the occupant settled, and within which, believing it to be secure, he has, in good faith, been extending his farm and other improvements, in the hope of having a permanent and comfortable home, where be might live independently, and enjoy the fruits of his honest toils; but where he could not, and would not, live, if nothing be left to him but the isolated walls of his dwelling house. Such a restricted interpretation of the statute of 1809, would, in our judgment, be not only subversive of the end and policy of its enactment, but irreconcilable with the popular and practical import of its phraseology, and even incompatible with the most technical meaning of the terms — “ settled” or settlement — reside or residence Why should the dwelling house be alone protected? and why should every other improvement subservient to the'dwelling and essential to its enjoyment as the *305 ‘©ecupant’s home or place of residence,,be without the pale of the protecting statute ? Why should the legislature have been so solicitous to protect the cabin or other house in which the occupant eats, and have left unprotected, the field which his labor cleared and enclosed, and xohich yields his children bread, and to enjoy which lee settled himself and built him a shelter ? The idea of home, or of settlement, is more comprehensive and enlarged than the mere walls of the house, or the camp, or the tent, in which the occupant eats and- sleeps. According to the most circumscribed import, which it can be reasonably or consistently deemed to have, it is coextensive with the enclosed farm, and is an aggregation of every improvement embraced by the actual close, and subservient to the occupant’s comfortable residence. To that extent, at least, he is actually settled ; and he should be deemed to be settled equally on every part of the enclosed area, which includes his dwelling house, and which, with all its improvements, is an entirety, properly denominated his settlement, residence, or home. As the circumference of that consecrated area is extended, the settlement is enlarged; and whenever it includes any portion of land claimed under a title adverse to that of the occupant, he should be deemed to be, eo instanti, settled within the bounds of the adversary’s claim.
The same person can have but one actual settlement, at one and the same time ; but that settlement may be more extended or circumscribed at one time than at another time, and may interfere with more than one adversary claimant at the same time, or at different times, without any removal of the occupant’s dwélling house. ‘This may all be true, even if his settlement be restricted to the walls of his dwelling. For instance, if, when he first settled, his house was so small, as to encroach on the boundary of only one adversary claimant, and should, therefore, on the hypothesis, that that house alone defines the extent of his settlement, be deemed to be settled on one ohly of the conflicting claims ; still, by building another house on the site of the first and of dimensions so much larger as to encroach on other adjoining and con- *306 Aiding claims, lie would Chen be settled within the bounds of each and all of the claims on which'his house is built. And the same may be as truly said of his en tire close, if that, and not the wails of his dwelling house, should be deemed the boundary of his settlement. But in each case, there would be only one settlement, though it was of greater or less extent at different times, ás the close defining it, was, at one time, or another, more or less circumscribed ; just, as the occupant himself, though hemever lost his personal identity, was Iárger or smaller, and filled more or less space, at different periods of his life.
To constitute an actual settlementuponland, to which there tei&ring dalnT the dwelling tierSor sometíthe improve-ed with itjtnust be upon the the adversary claimanthas no and his right wfii not bo affected. But whenever the settler encroach, es uponthelap, it operates as notice tohisadversy ;who may-then bring his suit; and if ho fails to do so, for seven years, lie will be barred.
*306 Security and encouragement to honest industry, and a consequent incitement to the settlement and improvement of the country, were the'leading objects of the statute of 1809 ; and not only those ends, but the words of the act, should, in our opinion, be deemed to imply, as a matter of course, that the bona fide occupant should be secured, at least to the extent of his improvements connected with and subservient to his residence. To that extent, he is actually settled on the land on which he resides, and which he claims as his own, and therefore .improved. If he is settled in his house, why is he not also settled on his enclosed farm, on which he built’his house, and lives, for the purpose of enjoying the fruits of his agricultural labor ? and would he not be settled on the whole farm, even though he lived on it without any house?
Actual settlement is a comprehensive term — a nomen p-eneralissimum, which includes more than a dwelling house. Generally, it should, m the abstract and popular sense, deemed coextensive with the claim of title, under which the occupant settles on a part, in the name of the wh°Ie t>'act which he claims as his own ; and then the entire tract is an indivisible unit, and altogether identisettlement.
But so comprehensive an import could not, justly or consistently, he allowed to the term “ actually settled,” }n tfog statute of 1809, unless the occupant should have built his dwelling house, or extended his actual close, or m-j^g other appertinent improvements, within the *307 limits of the adversary claim, conflicting with that under which he settled.
It was, doubtless, the intention of the legislature, only to substitute, in behalf of actual bona fide settlers, a limitation of seven years, for the general limitation o.f twenty years. And hence, as an adversary claimant of a tract of land, partially interfering with, a tract settled on by another claimant, might have no cause of action against the occupant, until, by actual enclosure, or other improvement, he had encroached on some portion of the land embraced within the conflicting boundary, it would not be just or consistent with the purpose of substituting seven for twenty years, to give to the term settlement, or u settled,” such an import as to make seven years a bar to an entry, when no cause of action had ever occurred. But it would be perfectly just and consistent* with the policy of the act of 1809, to give it such an-operation, as to protect, a bona fide settler, to the whole extent of his recorded claim, whenever he had extended the actual close including his dwelling, or made other appertinent and permanent improvements, upon the interfering claim, so as to furnish to the adversary claimant sufficient and continued cause of action, for seven years prior to the institution of his suit; and when the adversary claimant had not, also, been, at any time during the seven years, actually possessed of the interference. And this interpretation of the statute, which appears to us to be reasonable and consistent, is fortified by the intimation already quoted, from the case of Hite’s heirs vs. Shrader, (supra.)
There is, as already suggested, an obvious reason for restricting the ordinary and natural import of the term actual settlement, or “ actually settled,” and for giving to it, in cases within the operation of the statute of 1809, an artificial and legal signification more limited in its range. But beyond that reason, we can perceive no sufficient or consistent motive for carrying the restriction ; especially, as any other or greater qualification might operate unjustly and inconsistently, and might often pervert the statute, and frustrate its obvious and admitted policy.
Review of cases supposed to conflict with the construction given in this opinion, to the 7 «g-wslaw; vizr
Bodley v. Coghill’s heirs. 8 Mar. 615—
Hog v. Perry, 1 Litt. 173—
Such a statute should be reasonably construed, ani| beneficently applied in favor of bona fide settlers and improvers; and such a construction and application will not,-as we believe, withdraw its protection liom the fields, and the garden, and the barn, and the meat house, of the occupant, and, by confining its panoply to the solitary dwelling house, leave it cheerless and destitute, and thus convert it into a prison, rather than the abode of comfort and security.
It is said, that the cases of Bodley vs. Coghill's heirs, &c. 3 Mar. 615; Hog vs. Perry, 1 Litt. Rep. 173; Smith vs. Nowells, 2 Litt Rep. 160, and May &c. vs. Jones &c. 4 Litt. Rep. 24, conflict with the interpretation which we give to the statute of 1809. Wfe think otherwise; and will briefly notice those cases, for the purpose of shewing why we so think.
In the case of Bodley vs. Coghill’s heirs, there was no proof, that the party claiming the benefit of the statute of 1809, had ever lived upon or near the land of the other party, or even within the bounds of his own conflicting claim; the only proof on that point, was, that he “had entered upon the interference in 1795,” and had-“held the possession thereof ever since and thereupon, this court decided, that there was no proof of any actual settlement on the land ; and said, very truly, that, “the possession may have been acquired and continued» by clearing and enclosing, or by other mode of entry upon land, without an actual settlement.” Here the court evidently decided, only, that there being no proof of an actual residence within the limits of either of the conflicting claims, a naked possession, even by enclosure, could not, per se, amount to an actual settlement. But there is no intimation that, if there had been an actual residence within the bounds of the settler’s claim, the occupant, by an extension of the actual close including that settlement, should not have been deemed to be settled” to the extent of his' entire enclosure.
In Hog vs. Perry the court said : — “There is proof of clearing or improving and cultivating the soil; but no actual settlement or residence is shewn during the whole seven years next preceding the commencement of this ac* *309 lion. On the contrary, this cultivation of the soil, or use of the land, was interrupted for several years, part of the seven, and nobody used the land, except that the appellees kept up a continual claim there.” Surely there is not a word in that case relating, in the remotest degree, to the point we are considering.
Smith v. Nowells, 2 Littell, 160-
In Smith vs. Nowells, it appeared, that there had been no settlement on the land in contest, by the party claiming the protection of the statute of 1809 ; but a tenant of that party had been permitted to clear and enclose a field within the interference of the conflicting claims, which, after being occupied for less than seven years, by the tenant, had been abandoned, and deprived of its enclosure. The court then said: — “It also appeared that the defendants had, for some years, lived, and still live, within the boundaries of the patent under which they claim, but outside of the interference with that of the lessor of the plaintiff, and that the improvements, where they settled, were not upon the interference.” And, in that state of case, the court decided that the circuit court erred in instructing the jury to find for the defendants, if they liad “ either settled upon or taken possession of the land” claimed by the' plaintiff, and had con-tinned so possessed for seven years ; and assigned, for that obviously correct decision, the following reason :— “ The jury, according to the instruction given by the court, would have been bound to find for the defendants, although they might have obtained the possession by entry upon the land, or enclosing it, without any actual settlement upon it:” meaning only, by the latter part of the sentence, that the clearing and enclosing of the field by the tenant, unconnected as it was, with the residence of the landlord, was not an actual settlement by the latter; and that, by merely thus acquiring possession, he could not be deemed to have been actually settled on the land in contest. Thus it is perfectly evident, that there is nothing in that opinion repugnant to our interpretation of the statute. But, on the contrary, there is an indirect .implication in support of it. For the court said that, “ the improvements, where they settled, were not upon the interference *310 thereby intimating, that the improvements ¡md the settlement with which they were connected, were commensurable.
May's heirs v. Jones &c. 4 Litt. 124 — and Conclusion that the cases of Hite’s heirs v. Shrdder, Miller v. Humphreys, and Smith v. Nowells, favor the construction now given to the "act, while there is no case containing even an. intimation,conflicting with it. [Judge U. takes a different view of the cases.— Dissent: past.] Where different settlers,under in terfering claims to the same land, have improvements, united with their residences, upon the lap, and the possession of neither has been interrupted by the other, within 7 years —the extent of the possession of each will depend on his title and other facts to be proved.
Erroneous instructions are cause for reversal, notwithstanding thever diet may be such as it ought to have been, expositLn°ofthe law.
*310 In May &c. vs. Jones &c., there was proof tending to shew, that the actual residence had not been continued for seven years, although the possession acquired bj the settlement had never been interrupted ; and the court therefore’ said, “there may have been a continued possession of the land for seven years, without an actual residence thereon, during that time.”
Thus we have not been ' able to find any adjudged case, which contains even an intimation against our construction of the statute ; and, it is evident that the cases of Hite's heirs vs. Shrader and Miller vs. Humphreys, fortified by that of Smith vs. Nowells, favor that interpretation.
Then, considering the, phraseology, reason, arul object of the statute, and all the adjudged cases, its true interpretation must, we thin.k, protect against an antagonist claim, an occupant of the designated class, who shall have made and continued for seven years, within the bounds of the interference between the conflicting claims, any permanent improvement connected with his residence on his own iiiterfering claim and subservient to its comfortable enjoyment as his ‘home : — unless the adversary claimant shall, within that period, have been also settled on the interference, claiming it as his own land ; or shall have done something else to interrupt or change the possession ; and then the character and extent of each occupant’s possession would be determined by the titles and other facts proved on the trial.
Wherefore, it appears that the circuit judge erred, so far as the opinion which he gave to the jury differed from tfie exposition of the statute of 1800, which we have now just given.
But the counsel for the appellee has argued, that the judgment should be affirmed, because, as he insisted, the proof entitled his client to a verdict, even had the circuit court given to the jury, the correct, instead of an incorrect, exposition of the statute.
What, according to a proper construction of the law *311 and the facts, the verdict ought to have been, we shall not now enquire; because any opinion we might express on that point, would be altogether extra-judicial; for this court cannot know how the jury would have found, had there been no erroneous instruction ; nor can wc know, that the error in the opinion of the circuit judge did not operate to the prejudice of the appellant.
DISSENT,
Themeaniiwof the terms ‘set-tier* • ~ ^ ssttls-” ment,’ as used intheKentucky statutes generally, discussed.
Whether, by entering on the land in contest, the appellee interrupted the continuity of the appellant’s possession, prior to 18115; or whether the appellee had extended his enclosure, as he attempted to prove, across the line of interference, prior to 1816; or whether, in 1812 or 13, when a conveyance was made to him by Chin, it was understood between the appellant and himself, that he should hold the land so conveyed, and that the appellant’s possession.should not longer be construed to extend beyond his actual enclosure, and which may be proved by parol .testimony, or inferred from parol facts, without violating the statute of frauds and perjuries — are all questions which the jury had a right to decide from the evidence; and respecting''which, as there will be another trial, this court will intimate no opinion.
Judgment reversed, and cause remanded for a new trial
Judge Underwood dissenting.