Judge Underwood,
unable to concur with the other members of the Court, in the foregoing Opinion and Decision, presented his views upon the points of difference, in the following Dissent.
Unable to concur with my brethren in the opinion delivered, I deem it necessary to give my views as to the true meaning of the act of 1809, entitled “an act to compel the speedy adjustment of land claims,” so far as it applies to the present case.
The first and second sections of the act are the only two which need be considered; and the first remark * which I deem it important to make, is this; that the first section was intended to protect settlers “before the passage oí the act,” and the second section was intended *312 ¡-0 protect those who might thereafter settle op land-’* There is some difference in the language used in the sections, and they might be differently interpreted were it not, that the general scope and policy of. the act forbids the idea that the legislature contemplated taking the distinction between a previous and after settler, in such manner as to put the latter upon a more favorable footing'than the former. If there be a difference in the construction of the two sections, the after settler would meet with a more liber al protection than the previous settler. Such a difference would be altogether unreasonable: because, if any preference was given, it would, under the legislative motive disclosed in the preamble, most likely fall to that class whose labors had earliest contributed to redeem the country from its wilderness condition, and who, at the time of their settling, had fewer means of ascertaining the position of the various interfering claims, which covered their land, or parts of it. I shall, therefore, regard both sections as meaning to afford protection, upon the same terms, to the previous and after settler.
• The nature and extent of the protection, which the statute intended, will, I think, be very plain, if we attend to its language, and give proper effect to the terms hitler and settlement, which, in our land law, have a technical meaning..
The Virginia and Kentucky statutes, passed . for the purpose of appropriating the vacant, public domain, regarded the country as a vast wilderness. The design of the legislature, in granting lands to settlers, or in granting settlement rights, was to have the country improved, and filled with a thriving, happy population. The settler, by legislation, was to have a settlement right granted to him. Who was the settler? I answer, the man who penetrated the wilderness.in pursuit of a future residence, and having found a place suited to his wishes or necessity, there stopped, ceased his rambles, and began to improve, with a view to a permanent home. He was a settler from the time he built his half-faced camp, or erected his tent, provided he did it with the intern-.felon of remaining and living at that spot. Thus local* *313 ing himself upon land, and continuing to reside thereon the time required, he might obtain from the proper authorities, the grant o! a settlement right: to wit. a certificate allowing him to appropriate so much land, including the place where he settled, meaning where be stopped, and where he put up the first rude camp or cabin, to shelter himself from the weather, and where he resided the requisite length of time. If, as suggested Jn argument, he located himself in a hollow tree, and commenced improving, with a view to a permanent residence, the tree would answer all the purposes of a camp or a cabin, to designate the spot where he settled. The term settlement is sometimes, in common parlance, used to designate the settlement right, or number of acres granted to the settler, in consideration of his settling* and remaining the requisite time, upon the land. And in that sense, it may sometimes be used in legislative and judicial proceedings. Thus A B’s settlement, or preemption, means the four hundred, or the thousand acres, granted to him. But the term settlement, as used in the first and second sections of the act under consideration, means nothing more nor less, than the locating onesself upon the land, with a view to make a permanent residence, and manifesting that intention, by preparing the hollow tree for shelter,- or by erecting' the camp or cabin, and living in it. <■ This will be manifest by. considering another matter: to wit, the different circumstances which ¡.oust exist, or the ingredients essential, to constitute the protection of the settler, under the provisions of the statute.
Requisites of the seven years’ law, to enable a settler to avall himself of its protection.
First: the settler must have a connected title, in law or equity, deducíale of record from the commonwealth. Secondly: he must be an actual settler upon the land embraced by his legal or equitable title. Thirdly: such actual settlement or residence upon the land, must he continued for the term of seven years, during which time the title, legal or equitable, must abide in him — unless he is aided by the relation subsisting between v'endor and vendee. The concurrence of these things constitute the shield which the statute has *314 furnished. From what timo shall it avail ? or from what time shall the limitatiqn begin to run? There are two answers for the question: first, from the date or. commencement of the actual settlement, where the settler has title whén he enters on the land. But if he have no title, then, secondly, from the time he acquires 1 title including lus actual settlement. 4 he first answer, ^ whic.h is founded on the first section of the act shews clearly, that the limitation runs from the dial the settler located himself. The second answer, foundéd on the second section, shews that the limitat-ion runs from the acquisition of title. There is neither section, any expression which holds, out idea, that the limitation can.begin to run from finy other period, for any part'of the land claimed by the set-tier; and yet, under the opinion delivered, there is a limitation of seven years, commencing — not at the time, the actual settler first establishes himself apon ^ie ^anc^ un^er lide, nor at the time he acquires title, if he settles before he has any — but, from the time he extends his improvement, his enclosures, over the line of the adversary entry, survey .or patent. To my mind, such a construction is equivalent to an interpolation providing for a third class, of cases no where mentioned in the statute. The error results from confounding the term settlement with improvement, and regarding the enlargement of a man’s fields around his dwelling place, as the enlargement of his actual settlement, or the making of a new settlement, within the protection contemplated by the statute:
The statute begins to run from tier entered on the land when he entered with title, and from the time when ne acquired tiie tit)e, if he had ?ered°Uwkhout one. The ex-wards”’of^the improvements his dwelling house, mto the limits of an adversary claim, will not make upon it, within the acTnÍ[The othevtwojudges 30S*ja~^nte
* I can find no pretext in the statute, for considering the place of the first actual settlement a focal point, from which the old or new settlements may radiate to all points of the compass, and invade A’s patent, on the worth, B’s, on-the south, C’s and D’s, on the east and west, so as to divest each of them of their right of entry, after the lapse of seven years adverse possession, when the settler’s actual location, in the beginning, was not within the bounds of either of their claims, and when the settler has continued to reside or dwell an the outside of their lines. The construction by which a *315 man is made an actual settler on four, or forty, different and distant patents, when the dwelling houses, covering the spot where his first camp or cabin was erected, and in which he has all-along continued to reside, are upon neither, is an interpretation of the statute (to quote the language of the opinion) “subversive of the end and policy of its enactment, and irreconcilable with the popular and practical import of its phraseology.” The object of the statute was, to secure the home — the dwelling, of the settler and his family, and to prevent his being “cast out naked to the world.” . This object .is dearly expressed in the preamble. It was never intended to enable the settler, by the extension of his fences, and trespassing upon the land of others, to divest them of their right of entry, upon seven, instead of twenty years, adverse possession, unaccompanied by actual residence upon the land.
it seems to me, that this question will be placed beyond the possibility of a doubt, by an attentive consideration of the language of the first section of the act. That section declares in substance that, “no action at law, bill in equity, or other process,' shall be commenced by any person claiming land under an adverse interfering entry, survey or patent, whereby to recover the possession from any person actually settled thereon, &c.” Now, unless the actual settler is settled upon the adverse claim about to be asserted, there is no prohibition to the institution of suit. Let it be borne in mind, that the actual settlement means place of residence, according to various judicial interpretations and decisions, and then, I ask, how is it possible, under this stat-, ute, to prevent the adverse claimant, having the better-title, from asserting it successfully, if the occupant does-not reside within its bonds? That actual settlement, and residence, are the same thing, is p^afed by the considerationj that if they were not, then possession by improvements alone, without residence, continued'for seven years, would afford protection under the statute. No case can he found where the protection has been given without actual residence upon the land sued for; and it will be seen in'the sequel, that such residence *316 is indispensable to toll the right of entry, under the act of 1809. The opinion delivered concedes, that actual settlement is essential, but makes it out by an extension of the improvement across the line ; now if actual settlement and residence be the same thing, and it be indispensable to reside on the land which is sued for; in order to defeat the claimant, can it be possible, by extending the improvement over the line, to extend the actual residence over the line? A man, by extending his improvements in every direction around his dwelling, may invade various tracts patented to others, but because he does that, can it be said with propriety, that he resides upon, or is actually settled on, the land of each patent? The thing is impossible. There is no way to avoid the force of the argument, except by shewing, that actual settlement is one thing, and actual residence another, within the meaning of the statute y or by going still further on the idea of extending improvements, and making a man’s actual residence coextensive with the limits of his enclosures around the domicil; and thus confer upon him the character of an actual settler, or resident, upon the adverse patents, merely because he has enclosed parts of them Such a construction, I confess, ' violates all my ideas >of the meaning of the terms actual settler. A has a patent for a thousánd acres, and the question is, whether B is actually settled upon it. It is proved, that, when B first came to the country, he camped half a mile from A’s nighest line, built his cabin where he camped, and afterwards erected.a splendid mansion upon the site of the cabin, and has lived and resided in this camp, cabin and mansion, from the time he stopped travelling; yet, under the opinion, if he extends his enclosures connected with the dwelling house, over A’s line, he instantly beconj^ an actual settler, or resident, upon the land of A, and, if not sued within seven years, it divests A of his right of entry. Is not this conferring on B a sort of legal ubiquity? It makes him an actual settler, or resident, at two distinct places, and upon t.wo distinct patents at one and the same time..
*317 The main argument, in support of tiie doctrines of the opinion, rests upon the supposition, that the legislature did not intend to protect the domicil alone — which would bo useless, if all the adjacent fields,' orchards and pastures were recovered by an adverse claimant. I cannot perceive the basis of the supposition. We know that, in practice, the statute has been the means of protecting hundreds and thousands of occupants, and securing to them, not only their domicils, but large portions of land likewise. The legislature did not look to extreme cases; the general condition of the country was surveyed by the legislative eye, and then legislative wisdom prescribed a rule suited to the general condition. The rule was, if the claimant of the paramount title permitted any one to settle within the bounds of his entry, survey, or patent, and remain so settled for seven years, the owner of the superior title should not, thereafter, recover, provided the settler had a claim, or title, deducible from the records of the commonwealth. The paramount title holder may well complain of surprise, if his land is taken from him, not in virtue of an actual settlement in fact upon his claim, but in consequence of a constructive, actual settlement, growing out of the extension of fences. If the actual settler happens to locate himself and his houses on a few acres covered by no other claim than his own, and all the rest of his claim is covered by superior adverse titles, so that he loses all the land, except the few acres on which the houses stand, I admit that he might find much difficulty in supporting himself and family upon the premises left. But the legislature have not prescribed the rule in reference to such an extreme case. The rule has been made to turn upon the fact, whether the actual settlement, the place of original location, is upon the adverse interfering claim, or oil’ of it. The present is not an extreme case ; and I do not look upon it as proper to strain the obvious construction of a statute, to make it embrace a supposed possible case of hardship.
It is suggested, that it would be very hard on the qccupant, to permit the adverse claimant to recover the *318 kitchen, smoke house &c. provided his iiue run between them and the dwelling house. I do not feel myself at liberty to depart from a plain statutory rule, to save hard cases. There is a difference, however, between houses appertinent' to the mansion, and a distant enclosure ; and were it conceded, that the smoke house and kitchen constituted a part of the actual settlement, it would by no means follow that a distant corn field was a portion of the actual settlement, or residence, within the meaning of the statute. A case may be supposed, whore the line of the paramount adverse claim 'might run between the bed and fire place : and, in such case, it might be asked, is'not the occupant, actually settled on both sides the line? I concede it.' for an actual settler cannot be ’ restricted to a mere ideal point. His settlement, or what is the same, his residence, must have length and breadth ; but because it must of necessity cover more space than the ground he stands ujion, 1 cannot find in that circumstance, sufficient reason to extend it, by construction, to the limits of his enclosures. ’ '
Examination of the record and opinion m Anderson v. Tur(aa’^ud^U1 uijderstandsit,) tiñí majority is inconflict. Anie ° '■*
The foregoing view of the subject grows out of my understanding of the legislation of the country, and of ° J . the meaning of the terms actual settler and settlement, m ”vai'i°us statutes for appropriating-vacant land, beginning as far back as the Virginia act of 1779. But I reSarc^ the question now made, as having been determined by this court, in the case of Anderson vs. Turner, 3 Marsh. 131. That suit was instituted a few years only, after the act of 1809 took effect, and was decided in 1820, Fall Term. I have examined the original record, andT find that — “It was admited, that the defendant liad purchased of McKee, and that McKee’s patente issued in 1794, cbvéred the land in controversy ; and under that title, defendant has been actually possessed of the land in controversy ever since before the first day of January, 1808;.and it was also proven, that he had been living on part of the said land, but not the part in controversy, upwards of thirty years.” I copy from the bill of exceptions. The plaintiff gave in evidence, tlie surveyor’s report and connected plat, which show- *319 ®d how the patents, under which the parties severally claimed, interfered. The position of Anderson’s house and spring are laid down, and then there are zigzag parallel lines, or marks with a pen, extending from towards Anderson’s house and spring, into the patent bounds of Turner’s claim, and closed in Turner’s claim, by running the same kind of line or mark from the end of one of the lines running into his patent, to the end of the other. Within the space included by these zigzag lines, and the western line of Turner’s patent, the survey- or, has written “pt. Anderson’s field.” These, are the facts; and upon them, the court says: — “He (Anderson) is, it is true, proven to be possessed of the land in contest; but he is not shewn to have actually settled upon the land included within the claim of Turner, and it is only in cases of such a settlement, that the act can have any operation ” We perceive from the-facts, that Anderson had actual possession, inside of Turner’s lines, from January, ISOS ; the suit was commenced in 1S1'9 ; so that his possession was of eleven years duration, inside the lines of the patent, under which Turner claimed. Now, if the jury could reasonably have inferred from the evidence, that Anderson’s possession was the result of an actual enclosure, and that such enclosure was an extension of the fences from the curtilage around the dwelling house, then, under the doctrines of the opinion delivered, Anderson was shewn to have been actually settled upon the land in contest. It seems to me, that-it is impossible from the facts, to doubt the correctness of such conclusion, and that the jury were warranted in making it. The surveyor noted part of Anderson’s field inside Turner’s claim; and if it was only a part, tiie residue was across Turner’s line, towards Anderson’s house, and so shown to be situated by the zigzag lines, representing the fences.' That the improvement was continuous, from the dwelling house, over upon Turner’s patent boundary, is the rational de-. duction from the fact, that the parallel lines are not closed from their ends next the dwelling house — having been left open, no doubt to show, that the fields extended in that direction so far as would include the spring and *320 dwelling. It would be preposterous to suppose, that the field noted on the plat by the surveyor, and of which Anderson was proved to have been possessed for eleven years, was not enclosed by fences. If it had been-an unenclosed waste, Turner might have entered upon it, without suit. With such facts before them, furnishing the foundation for such deductions, the former judges of this court decided, that the act of 1809 did not protect Anderson, becausé he was not actually settled upon the land claimed by Turner. If the extension of the improvement from the dwelling, where .Anderson had been living .thirty years, over the line of Turner, was the extension of Anderson’s actual settlement, he ought to have been protected, and the court were wrong, if the opinion now delivered is right. But the court determined, that Anderson was not an actual settler upon Turner’s claim, for it was shown, that he had lived for thirty years out side of Turner’s lines, and therefore, he could not be an actual settler within his lines.
«TeS View of the cases of — Bodley v. Coghill’s hs. 3 Mar. 615—
To my mind, the opinion delivered conflicts with the decision in the case of Anderson vs. Turner, but even if they could be reconciled, by a criticism on the manner in which the facts are presented by the bill of exceptions, there are other cases with which the opinion delivered cannot be reconciled. I shall refer to some of the first cases, to prove, that actual settlement, and residence, are the same thing, within the meaning of the act of 1809, and also, to prove, that the possession which protects a defendant, under the statute, must be gained by actual settlement or residence within the lap, and not by improvement of any other description.
' In the case of Bodley vs. Coghill’s heirs, 3 Marsh. 615, the court says, “that statute (to wit — the act of 1809,) only operates as a bar to an action brought to recover the possession of land on which another has been actually settled for the time prescribed by the statute. But the agreed case does not state, that there was such an actual settlement, and.the possession of the defendant may have been acquired and continued by clearing and enclosing, or by other mode of entry upon the laud, without an actual settlement.”
Hog v. Perry, 1 Litt. 73—
Smith v. Nowell’s, 2 Littell, 160—
MayJg he¡rs Jones $c. 4 TOnoiusi^tljiit these cases and ¿ate¡ provetliat tin; settlement 3nd I'Ps^d&YitCC 0f a defendant must be on that part of his land with which an ylve'/.Ka|y a-,alm thorize him to ag^nUyea"s ]a‘® for his protec™ses »' conflict with the opinion of the court, in this case-
In the case of Hog vs. Perry, 1 Litt. Rep. 173, the court say, “possession alone, without residence, or without settlement and occupancy, cannot sustain the bar.” “There is proof of clearing, or improving and eultivating the soil, but no actual settlement or residence is shown &c.”
In the case of Smith vs. Nowells, 2 Litt. Rep. 160, the eourt sav, “the act of 1809, to compel the speedy adjustment of land claims, - which limits the time to recover land to seven years, has been construed to apply, only to those cases in which the possession has been acquired and continued by an actual settlement upon the land, and-not to those in which the possession has been obtained by entry upon the land, or enclosing it with a fence, or otherwise.” In the opinion delivered, the court' have applied the protection of the statute to a possession acquired, not by “actual settlement upon the land ” but to a possession acquired by “enclosing it with a fence.”
In the case of May's heirs vs. Jones &c, 4 Litt. Rep. 24, and in which I was counsel for the appellees, in the circuit court, the court say, “according to the most ohvious import of the act, there must have been an actual residence on the land in contest, for the time prescibed in the to authorize the jury to find for the appellees, under the operation of the act.” Henceforth, however, in direct violation of the principle here laid dow.n, defendants may protect themselves, under the opinion delivered, without anv actual residence on the land in contest, but bv the possession of a field upon the land in aon-test, which is connected by continuous fences, with the enclosures around the actual residence, situated off the land in contest. Whatever may he said about the facts of the cases from which I have' quoted the language of the court, with a view to show that the court ought riot to have used such language; it is nevertheless clear, that the language, as used, evidences the sense of the court that an actual residence on the land in contest is essential to constitute the bar. I cannot comprehend that reasoning which makes a man’s actual residence at a *322 p]acC) other than where his houses are, and to make a man, by construction, an actual settler all over a thousand or ten thousand acres of land, seems to me to be a tota^ Pervers*on l,se °f language.
Remarks on the heiminShradert
T deem it useless to follow up later cases. They all harmonize, and taken altogether, prove that actual settlement, and actual residence, are the same thing, and that it must be upon the claim of the plaintiff at law, or complainant in chancery, before his right of entry can be tolled, or right of action destroyed, by seven years adverse possession. Before the passage of the act of 1809, twenty years continued, adverse possession, with or without residence, or actual settlement on the land in dispute, tolled the right of entry. The legislature intended to alter this rule, so far as it related to actual settlers on t’he band in contest, and to toll the paramount claimant’s right of entry, by seven instead of twenty years continued adverse possession, where the settlement or residence was situated on the land in controversy. I had considered these doctrines fixed. I now look upon them as overturned, and have discharged an unpleasant duty in protesting against it.
It is supposed, that an inference may be drawn from the language of the court in the case of Hite’s heirs vs. Shrader, 3 Litt. Rep. 446, favorable to the opinion now delivered. In that case, it is said, that Shrader, “settled out side of the interference, and that no part of his enclosure is within the bounds of the land claimed by the complainants; and according to the settled construction of the act, it only applies to cases where suit is brought for land on which the adverse claimant has been settled for seven years.” I think the court intended by this language to show, that there was no pretext to apply the limitation of seven years, for the protection of Shrader. As there was neither settlement, nor •enclosure, there was no ground for argument, and tiie court disposed of the case by declaring, that the statute had no application. If any inference can be drawn from the case, it is unfavorable to the doctrine now asserted, in the opinion delivered, because the court say, “Shrader settled outside the interference,” and conclude *323 by saying that the statute only applies to cases where suit is brought for land on which the adverse claimant has been settled for seven yearsthereby obviously intimating, that a settler out side of the interference, cannot become a settler within the interference, so long as his actual residence or domicil remains and continues where he first located himself.